# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| ROXANNE PITCHFORD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CASE NO. 09 C 3757 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CAROLYN TRANCOSO, Warden, | ) | |
| Dwight Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Roxanne Pitchford ("Pitchford" or "Petitioner") is currently incarcerated at Dwight Correctional Center in Dwight, Illinois. Carolyn Transcoso, the warden of the facility, has custody of Petitioner. Pitchford has filed a *pro se* writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Petitioner's petition for a writ of habeas corpus [6] is respectfully denied.

## I.      Background

### A.      Factual Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). Therefore, the Court adopts the following accounts from the Illinois Appellate Court's Order in *People of the State of Illinois v. Pitchford*, No. 1-04-1611 (Ill. App. 1st Dist. July 31, 2006).

In January 1997, fifteen-year old Pitchford, along with her friend Jeanette Burrell,[1] ran away from the DCFS group home where she had been living. Pitchford and Burrell went to live with James Hudson, Burrell's stepfather. Hudson allegedly made sexual advances towards Pitchford, which Pitchford rebuked and reported to Burrell. The two girls told their respective boyfriends, Eric and Eddie Crawford,[2] about Hudson's actions. Eric and Eddie asked Pitchford and Burrell if they wanted anything to happen to Hudson, and the girls responded affirmatively. The four then hatched a plot to murder Hudson. They determined that Eddie would use a meat cleaver and Eric would use a hammer to kill Hudson on his payday. The murder was to take place in a vacant apartment upstairs from Hudson's residence so that the four could continue to live in Hudson's apartment after his death. Pitchford's role in the scheme would be to open the door to the apartment for Hudson and lock it behind her.

On the day of the murder, Hudson came home from work carrying groceries. Pitchford opened the door for him. Eric and Eddie instructed Hudson to go to the vacant apartment but Hudson refused. Eric then hit Hudson in the head with a hammer. Hudson attempted to ward off the attack and managed to enter his apartment. Eric went into the kitchen and grabbed a knife. Eddie then repeatedly hit Hudson, who was on his couch, on the head with the hatchet, until he had killed Hudson. After Hudson was dead, the boys took the money out of Hudson's pockets.

The next day, Eddie and Eric removed Hudson's body from the couch and wrapped it in a sheet. The foursome – the Crawfords, Burrell, and Pitchford – then went out to buy air freshener. Upon returning, they placed Hudson's body in a closet in the back of the apartment and watched television. The following day, Pitchford went to her grandmother's home and told

---

[1] Jeanette Burrell is often identified as "Kita" in the record.
[2] Eddie and Eric Crawford are cousins.

her grandmother that she "was in the wrong place at the wrong time" and that she had been involved in a "murder."

Hudson's body was found on February 5, 1997, and Burrell and the Crawfords were arrested four days later. Pitchford, however, was not arrested until November 17, 2001. After her arrest, Pitchford gave a videotaped statement laying out her involvement in the murder. Prior to her trial, Petitioner filed a motion to suppress her videotaped statement, alleging that she made it unknowingly and involuntarily because she was not given her Miranda warning, that she was incapable of understanding and waiving her rights, and that her statement was the product of physical, psychological, and mental coercion due to her limited cognitive ability.[3] After holding a hearing on the motion, at which the court heard the expert testimony of three doctors who evaluated Pitchford to determine her ability to understand a Miranda warning, the trial court denied Pitchford's motion to suppress. Although the trial court found that Pitchford suffered from intellectual defects, it cited multiple cases in which mentally retarded teenagers were found to have the capacity to knowingly and voluntarily waive their Miranda rights. Of further significance to the court was that Pitchford was given her Miranda warnings at least four times, stated she understood those rights repeatedly, and did not appear to be "abnormal" in the videotaped interview.

The State then filed a motion *in limine* to prevent the defense from offering at trial the testimony of Dr. Joan Leska, a forensic clinical psychologist. The State argued that Pitchford was attempting to use Dr. Leska's testimony to present a defense of diminished capacity, which is not a recognized defense in Illinois. Pitchford countered that Dr. Leska's testimony was relevant to the issue of how much weight the jury would and should give to Pitchford's videotaped statement, and that Dr. Leska possessed knowledge regarding Pitchford's IQ and

---

[3] Pitchford's IQ is variously reported in the record as either 63 or 64.

mental condition. The court reserved ruling on the motion, and at the conclusion of the evidence, ruled that Dr. Leska's testimony was irrelevant and inadmissible because Illinois does not recognize the diminished capacity defense.

## B. Procedural History

On December 12, 2003, a Cook County jury convicted Pitchford of the first degree murder of Hudson. At her sentencing hearing on February 26, 2004, the trial court sentenced Pitchford to sixty years in prison. In sentencing Pitchford, the trial court stated that it had "considered the Presentence Report, the social history, the evidence presented at trial, as well as the participation of the three offenders [Burrell, Eddie Crawford, Eric Crawford] who had been before me over the years, all within the framework of factors in aggravation and mitigation."

With the assistance of counsel, Pitchford appealed her conviction, arguing that: (1) because she lacked the intellectual capacity to knowingly and intelligently waive her Miranda rights, the denial of her motion to suppress must be reversed and the cause remanded for a new trial; (2) she was denied her Sixth Amendment right to the effective assistance of counsel when her trial counsel failed to offer available expert testimony (*i.e.*, Dr. Leska) concerning Pitchford's mental impairment for the jury to consider in determining the reliability and credibility of her confession; and (3) the sixty-year sentence was an abuse of discretion because the trial court failed to give sufficient consideration to Pitchford's mental retardation, age, and other mitigating factors. The State's response argued that: (1) the trial court properly found that Pitchford possessed the intellectual ability to knowingly and intelligently waive her Miranda rights; (2) Pitchford's trial counsel was not ineffective for failing to offer inadmissible expert testimony; and (3) Pitchford's sixty-year sentence was proper.

In its opinion of July 31, 2006, the Illinois Appellate Court for the First Judicial District affirmed Pitchford's sentence. With respect to Pitchford's first argument, the appellate court found that despite Pitchford's low IQ, she was read her Miranda rights multiple times and understood her actions when making her videotaped confession. Regarding her second argument, the appellate court relied on the oft-cited standards in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), to state that to prevail on her ineffective assistance of counsel claim, Pitchford would have had to satisfy a two-pronged test: (1) trial counsel's representation fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result of the trial would have been different. The court agreed with Pitchford that, under *People v. Gilliam*, 172 Ill. 2d 484, 512–13 (1996), Pitchford could have presented evidence to the jury that might affect the weight or credibility to be given to her confession. However, the court could not find that Pitchford "suffered prejudice" as a result of her trial counsel's failure to pursue having Dr. Leska's testimony admitted on this basis. Finally, the appellate court found that the trial court did not abuse its discretion in sentencing her to sixty years in prison, and that the trial court had properly considered all relevant factors in coming to its sentencing conclusion.

On August 10, 2006, Pitchford, again represented by counsel, filed a Petition for Rehearing in the Appellate Court, arguing that rehearing was necessary because the record rebutted the Appellate Court's presumption that Dr. Leska "could not or would not have offered testimony" about Pitchford's mental impairment and its relation to her mental condition at the time of her confession. The court denied this petition on August 23, 2006.

A little over one month later, on September 28, 2006, Pitchford filed a Petition for Leave to Appeal ("PLA"), pursuant to Illinois Supreme Court Rules 315 and 612. In the PLA,

Pitchford's counsel argued that review was necessary because "the appellate court *presumed* that the expert [Dr. Leska] would not have offered testimony regarding Roxanne's mental impairment and its relation to her mental condition at the time she confessed." PLA at 2. Counsel maintained that the Appellate Court's reliance on this presumption was rebutted by the record, necessitating the Illinois Supreme Court's review "because the violation of Roxanne Pitchford's constitutional right to the effective assistance of counsel resulted in the violation of her right to familiarize the jury with every circumstance attendant to the State's procurement of her confession." PLA at 3. The Illinois Supreme Court denied Pitchford's PLA on November 29, 2006. Pitchford filed a petition for writ of certiorari, which the United States Supreme Court denied on May 21, 2007.

On March 8, 2007, Pitchford filed a *pro se* post-conviction petition pursuant to the Post-Conviction Hearing Act, 725 ILCS 5/122-1 et seq. In the petition, she alleged that her counsel "failed to have Roxanne Pitchford approach the bench to testify on her own behalf in defense of the video statement." She also alleged that while she was asking questions about "speaking for herself," her trial counsel told the judge that Pitchford was disruptive and she would have someone from the Public Defender's office sit with Pitchford during the trial to explain things to her. Furthermore, Pitchford alleged she was denied due process because the trial court erred in forcing her trial counsel to go to trial when counsel needed more time to prepare, in allowing a woman who works with the Public Defender's office to sit with Pitchford at trial even though Pitchford was found mentally fit, in letting the transcript of Pitchford's videotaped statement go back to the jury room with the jurors in the middle of the trial, in accepting defense witness Dr. Leska's title, in allowing hearsay to be presented, in allowing one of the State's expert witnesses, Dr. Messina, to testify about a test that Dr. Messina did not perform, in finding Pitchford fit to

stand trial, and in failing to fully consider Pitchford's IQ. Finally, she claimed that her trial counsel was ineffective for failing to offer expert testimony of her mental impairments, for refusing to deal with Pitchford's questions and not knowing the woman who sat with Pitchford at trial, for failing to file a timely motion to suppress, and for failing to call defense witnesses.

The circuit court summarily dismissed Petitioner's petition as "frivolous and patently without merit" on May 9, 2007, finding that her petition could have been dismissed on waiver and *res judicata* alone, because all of her claims were apparent from the record and could have been addressed in her earlier appeals. The judge also imposed $155.00 in court costs and fees based upon Pitchford having filed a frivolous petition, pursuant to 735 ILCS 5/22-105, which allows for the imposition of fines if prisoners file "frivolous" suits. The $155.00 assessment included a $90.00 filing fee pursuant to 705 ILCS 105/27.2(a), a $50.00 State's Attorney fee pursuant to 55 ILCS 5/4-2002.1, and a $15.00 mailing fee pursuant to 705 ILCS 105/27.2(a).

Pitchford filed a Notice of Appeal of this decision on May 30, 2007. Again represented by the state appellate defender's office, Pitchford made two main arguments: (1) the Circuit Court erred in summarily dismissing Pitchford's *pro se* post-conviction petition because Pitchford alleged the gist[4] of a meritorious constitutional claim of ineffective assistance of counsel for denying Pitchford her right to testify at her trial; and (2) the imposition of costs and fees pursuant to 735 ILCS 5/22-105 for filing a frivolous petition violated Pitchford's rights to equal protection because only prisoners are subject to these sanctions. The Appellate Court affirmed in part and vacated in part. Regarding the first argument – that Pitchford had set out the

---

[4] In arguing that Pitchford only had to make out the "gist" of a meritorious claim, Petitioner's counsel relied on *People v. Jones*, 213 Ill. 2d 498, 504 (2004) ("[a] *pro se* litigant need only present the gist of a constitutional claim to survive the summary dismissal stage of section [725 ILCS 5/122-2.1]"), and *People v Dredge*, 148 Ill. App. 3d 911, 913 (4th Dist. 1986) ("in order to withstand dismissal at the first stage of post-conviction proceedings, a petition for post-conviction relief need only contain a simple statement which presents the gist of a claim for relief which is meritorious when considered in view of the record of the trial court proceedings").

gist of a meritorious claim of ineffective assistance of counsel because counsel did not allow her to testify in her own defense – the Appellate Court found that Pitchford's argument was based on a statement that her counsel had made at the trial. Therefore, the court found that Pitchford could have raised the issue on direct appeal, but did not.[5] Accordingly, Pitchford forfeited the claim unless other recognized exceptions to the rule that a claim not presented to the trial court has been waived – such as fundamental fairness or incompetence of appellate counsel – applied. The court found that none applied. Furthermore, the court found that the record did not demonstrate that Pitchford ever told her trial counsel that she wished to testify at trial and was rebuffed, and had filed no other affidavits or other evidence to support this claim.

The court then addressed Petitioner's second argument, that the imposition of costs and fees pursuant to 735 ILCS 5/22-105 sanctions litigants who are incarcerated at the time of filing, and by doing so, burdens their fundamental right of access to the court. The court rejected this argument, noting that it had already ruled "that the imposition of costs and fees pursuant to section 22-105 is constitutional because the statute does not actually preclude a prisoner from filing a post-conviction petition, and therefore does not violate defendant's equal protection rights." However, the court found that the $50.00 State's Attorney fee imposed by the trial court was improper because Pitchford prepared her petition *pro se* and that it was dismissed at the first stage of proceedings with no input by the State's Attorney. The court vacated the $50.00 fee, but affirmed the judgment in all other respects.

Pitchford filed a PLA to the Illinois Supreme Court, raising only the issue of whether the appellate court erred in upholding the constitutionality of 735 ILCS 5/22-105 because the statute

---

[5] According to the Appellate Court, "The purpose of a post-conviction proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, *and could not have been*, determined on direct appeal. *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Thus, all issues that could have been presented on direct appeal, but were not, are considered waived." (Emphasis added).

violates both the due process and equal protection clauses. She argued that the appellate court erred because: (1) it ignored Petitioner's argument that the imposition of "fees and costs" pursuant to the statute serves a punitive purpose; (2) the appellate court failed to consider the fundamental unfairness created by § 22-105 by resorting to the "indefensible legal fiction" that "the statutory definition of 'frivolous' enables prisoners, who are not lawyers, to 'guard against such a determination'"; and (3) the appellate court's decision was inconsistent with Supreme Court of the United States precedent, namely *Rinaldi v. Yeager*, 384 U.S. 305 (1966).[6] On March 25, 2009, the Supreme Court of Illinois denied Pitchford's PLA.

On June 26, 2009, Petitioner filed her Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The same day, the Court granted Petitioner's motion for leave to proceed *in forma pauperis*. In her *pro se* petition, Pitchford makes six arguments for why the petition should be granted: (1) the Appellate Court erred in upholding the constitutionality of 735 ILCS 5/22-105, which violates the Due Process and Equal Protection clauses of the Constitution; (2) Petitioner was denied her Sixth Amendment right when she was "not allowed to defend herself" and her Fifth Amendment right when she was "forced to testify against herself" [i.e., through her videotaped confession, played for the jury during her trial]; (3) Petitioner's trial counsel was ineffective and her due process rights were violated when her counsel was "forced" by the court to go forward with trial when they stated they needed more time; (4) Petitioner's due process rights were violated when the State's expert witness Dr. Messina was allowed to testify regarding a test of Petitioner's mental capabilities that Dr. Messina did not administer; (5) Petitioner's right to have and confront witnesses was violated when the trial court refused to

_____

[6] In *Rinaldi*, the Supreme Court considered a New Jersey statute that imposed a duty on prisoners to reimburse the county for the costs of a transcript in the case of an unsuccessful appeal out of their institutional wages; no parallel statute existed for those not incarcerated. The Supreme Court held this to be a violation of the Equal Protection Clause of the Fourteenth Amendment. *Rinaldi*, 384 U.S. at 311.

allow Dr. Leska to testify; and (6) the trial court erred and gave Petitioner "an excessive and cruel punishment" when she "left the scene of the crime," and failed to take into consideration mitigating factors in determining her sentence of 60-years imprisonment.

In its Answer, Respondent argues that Petitioner procedurally defaulted claims (2) through (6) because they each suffered from one or both of two procedural defaults: (1) Petitioner did not fairly present them through one complete round of the State's established appellate review process; and/or (2) the state court judgment rested on an independent and adequate state law procedural ground. Respondent also contends that Petitioner did not establish that her procedural defaults should be excused for "either of the only two exceptions: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) failure to consider the claim will result in a fundamental miscarriage of justice." Respondent further argues that while Petitioner's first ground for relief – the imposition of fees for a frivolous filing – is not procedurally defaulted, it fails for three reasons: (1) it does not state a claim that she was "in custody" in violation of federal law; (2) there is no equal protection violation because only prisoners can file post-conviction petitions and the statute would pass the rational basis review in any event; and (3) Petitioner points to no Supreme Court precedent guaranteeing a prisoner the right to a free post-conviction petition.

## II.     Legal Standards

### A.     The "In Custody" Requirement for Habeas Petitioners

In order for this Court to have jurisdiction, Petitioner must have been "in custody under the conviction or sentence under attack" at the time that she filed her petition. *Maleng v. Cook*, 490 U.S. 488, 490 (2004) (internal quotation marks omitted); see also 28 U.S.C. § 2254(a). The mere fact that a petitioner is in some type of custody at the time of filing is not sufficient to

secure jurisdiction; rather, the custody must relate to the sentence being challenged. See *Maleng*, 490 U.S. at 491-92 (explaining that in *Carafas v. LaVallee*, 391 U.S. 234 (1968), the holding rested on "the fact that the petitioner had been in physical custody *under the challenged conviction at the time* the petition was filed.") (emphasis added). A prisoner who has been placed on parole remains "in custody" under the related sentence because he still must abide by the conditions of his release (*Jones v. Cunningham*, 371 U.S. 236 (1963)); however, once a sentence has fully expired, a petitioner no longer is "in custody" under § 2254 and no longer can file a petition for a writ of habeas corpus regarding that sentence. *Maleng*, 490 U.S. at 491.

### B. The Exhaustion Doctrine

Prior to filing a habeas petition in federal court, a petitioner seeking relief from state custody must have "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); see also 28 USCS § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This exhaustion requirement "serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1972)). It requires the petitioner to assert each of his or her federal claims through one complete round of state-court review, either on direct appeal of his or her conviction or in post-conviction proceedings, before proceeding to federal court. See *O'Sullivan,* 526 U.S. at 845; see also *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). This includes presentation of the claims to appellate courts where review is discretionary and such review is part of the ordinary appellate procedure in the State. *O'Sullivan*, 526 U.S. at 847 (requiring a petitioner to present his claims

to the Illinois Supreme Court in a petition for leave to file an appeal even though that Court's review was discretionary).

To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and must also alert the state court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). If the federal court reviewing the habeas petition is not satisfied that the petitioner gave the state courts "a meaningful opportunity to pass upon the substance of the claims [] presented in federal court," the Court cannot reach the merits. *Chambers*, 264 F.3d at 737-38; see also *Sweeney*, 361 F.3d at 332.

"Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim(s) to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(d)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim(s)." *Perruquet*, 390 F.3d at 514 (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); see also 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001). However, where a petitioner already has pursued state court remedies and there is no longer any state corrective process available to him or her, "it is not the exhaustion doctrine that stands in the path of habeas relief, see 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default." *Perruquet*, 390 F.3d at 514.

### C.     Procedural Default

The procedural default doctrine, also grounded in principles of comity, federalism, and judicial efficiency, ordinarily precludes a federal court from reaching the merits of a habeas claim when either (1) the claim that was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred.  *Id.*; see also *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 263 & n. 9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004).  Thus, when a habeas petitioner has "exhausted his state court remedies without properly asserting his federal claim at each level of the state court review" – and the opportunity to raise that claim in state court has passed – the petitioner has procedurally defaulted that claim.  *Lewis*, 390 F.3d at 1026. Similarly, procedural default on independent and adequate state grounds occurs where the state court explicitly invoked a state procedural bar rule as a separate basis for its decision to deny the petitioner relief, even if a state court reaches the merits of the petitioner's challenge to his or her conviction in an alternative holding.  See *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005) ("When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed.").

### D.     Federal Habeas Relief for State Prisoners

If the district court finds that petitioner was in custody when she filed her appeal, that she exhausted her remedies at the state level, and that her claim was not procedurally defaulted, the court then considers the merits of the petition.  A petitioner can challenge a state proceeding by showing that it was either "contrary to, or involved an unreasonable application of, clearly

established Federal law" or that it was "based on an unreasonable determination of the facts." 28 U.S.C. §2254(d)(1-2) (2000) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)).

A state proceeding is "contrary to" clearly established federal law "if [it] arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state [proceeding] confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state proceeding constitutes an "unreasonable application" of clearly established federal law if the state proceeding identified the correct legal rule but unreasonably applied the controlling law to the facts of the case. *Williams*, 529 U.S. at 407. Notably, "an unreasonable application of federal law is different from an *incorrect* application of federal law," (*id.* at 410 (emphasis in original)); an "unreasonable" application requires that a state proceeding rest "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

## III. Analysis

### A. Claims Two through Six

Before reviewing Petitioner's claims, the Court must determine whether any corrective processes remain available under Illinois law to remedy any of Petitioner's potential defaults. As noted above, Petitioner already pursued certain of her claims in one round of post-conviction

proceedings. Therefore, in order to return to Illinois courts for consideration of any unexhausted claims, Petitioner would be required to file a second petition for post-conviction relief, which would require leave of court. See 725 ILCS § 5/122-1(f) ("One petition may be filed by a petitioner * * * without leave of court"). Leave of court to file a successive post-conviction petition with an additional claim or claims is granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* Illinois law specifies the following regarding the cause and prejudice standard: "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* Moreover, a separate provision in the Illinois post-conviction act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS § 5/122-3. The disposition of an initial post-conviction petition thus has preclusive effect with respect to all claims that *were raised or could have been raised* in that petition. See *People v. McDonald*, 365 Ill. App. 3d 390, 392-393 (3d Dist. 2006) (emphasis added).

The Court does not believe that Petitioner could overcome the preclusive effect of her direct appeal and post-conviction petitions in state court. Petitioner's claims two through six do not, for example, raise new constitutional issues, such as ineffective assistance of appellate counsel, that have arisen since her post-conviction proceedings and could be treated in a successive petition. Instead, in claims two through six, Petitioner raises issues solely related to her *original* trial, which could have been disposed of in her direct appeal or her post-conviction

15

petition. Because Petitioner has not identified "an objective factor that impeded [her] ability to raise a specific claim during [her] initial postconviction proceedings," the Court concludes that the Illinois courts would find that Petitioner has waived her right to bring any additional claims. See *People v. Simmons*, 383 Ill. App. 3d 599, 605 (1st Dist. 2009).

Moreover, consideration of how Illinois courts might have treated Petitioner's unexhausted claims in a successive post-conviction petition is unnecessary for this Court's review, because the statute of limitations is fatal to Petitioner's ability to return to state court for further proceedings. Illinois's post-conviction act specifies:

> * * * * If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.

725 ILCS § 5/122-1(c). The six-month period provided by the Illinois statute lapsed long ago, and Petitioner has not alleged "facts showing that the delay" in raising new allegations with respect to her claims two through six "was not due to * * * her culpable negligence." *Id*. Therefore, Petitioner likely is barred from further proceedings on limitations grounds in the Illinois courts.

Turning to Petitioner's specific claims, the State contends that Petitioner has procedurally defaulted claims two through six of her habeas petition. With the above-enunciated principles in mind, the Court addresses each claim in turn.

### 1. Claim Two

In claim two, Petitioner argues that she was denied her Fifth Amendment right when she was "forced to testify against herself" through the admission of her videotaped confession and her Sixth Amendment right when she was "not allowed to defend herself." Put another way, she claims that her Fifth Amendment right against self-incrimination was violated by the admission

of her videotaped confession and that her Sixth Amendment right was violated when she was not allowed to testify during trial.

Petitioner failed to present the Fifth Amendment portion of claim two in one complete round of state court review. In her direct appeal, Petitioner argued that because she was not capable of knowingly and intelligently waiving her *Miranda* rights, the denial of her motion to suppress the videotaped confession should be reversed. However, she did not raise the specific Fifth Amendment issue presented here – whether she was denied her Fifth Amendment right when she was "forced to testify against herself" through the admission of her videotaped confession – in her direct appeal. Although this is not necessarily fatal to her claim (see *Ward v. Jenkins*, 612 F.3d 692, 697 (7th Cir. 2010) ("[i]n determining whether a claim has been fairly presented [to lower courts], we liberally construe *pro se* petitions")), Petitioner's failure to raise either issue in her subsequent petition for rehearing, her petition for leave to appeal to the Illinois Supreme Court, her *pro se* post-conviction petition, her post-conviction appeal, or her post-conviction petition for leave to appeal to the Illinois Supreme Court, renders moot any argument that the two issues could be construed as the same (or at least similar enough). Petitioner also has not addressed the "cause-and-prejudice" test, or attempted to explain why she did not raise this claim before Illinois courts in one full round of review. Because Petitioner failed to present this claim through one full round of state appellate review, and because she is precluded from raising it before Illinois courts now, Petitioner has procedurally defaulted this claim.

Petitioner's claim that she was denied her Sixth Amendment rights because counsel prevented her from testifying also is procedurally defaulted. First, she did not raise this claim through one full round of state appellate review. Although she raised it in her post-conviction petition and her post-conviction appeal, she did not raise it in her post-conviction PLA.

Furthermore, in Pitchford's post-conviction proceedings, the Illinois Appellate Court noted that this issue could have been presented on direct appeal but was not; therefore, the court "considered" this argument "waived." As a result, Petitioner's Sixth Amendment argument in claim two fails on both branches of the procedural default doctrine: a state court ruling against Petitioner on this claim rested on adequate and independent state grounds, and the claim was not presented in one full round of state appellate review. Thus, like the Fifth Amendment portion of claim two, the Sixth Amendment portion is procedurally defaulted.

2.     *Claim Three*

In her third claim, Petitioner alleges ineffective assistance of counsel and violation of due process because the trial court forced her counsel to go forward with the trial when counsel stated that they needed more time to prepare. While Petitioner did bring variations of an ineffective assistance of counsel claim at various stages in her hearings before Illinois courts, she did not raise this specific claim – regarding the failure to grant a continuance – through one complete round of state court proceedings. Not only did Petitioner fail to raise it in one complete round of state appellate review, Petitioner did not present this claim on direct appeal, in her first PLA, in her post-conviction proceedings appeal, or in her post-conviction PLA. Moreover, Petitioner has not demonstrated cause and prejudice, or a fundamental miscarriage of justice to excuse her default. Thus, claim three has been procedurally defaulted.[7]

---

[7] Even if Petitioner had not defaulted this claim, it likely would fail on the merits because Petitioner could not meet the stringent two-pronged *Strickland* test that her counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that but for her counsel's errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 687. This is especially true given that under the *Strickland* standard, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. All that Pitchford says in her petition regarding this claim is that "counsel was ineffective and her due process rights were violated when counsel was forced by trial court to go forward when counsel stated they need more time."

### 3. Claim Four

Petitioner's fourth claim – that her rights were violated when Dr. Messina, one of the State's witnesses, was allowed to testify regarding a test of Petitioner's mental capabilities that Dr. Messina did not administer – also fails. She did not raise this claim on direct appeal, in her first PLA, in her post-conviction appeal, or in her post-conviction PLA. Furthermore, she does not attempt to demonstrate cause or prejudice, or a fundamental miscarriage of justice, to excuse the default. Therefore, claim four also is procedurally defaulted.

### 4. Claim Five

In her fifth claim, Petitioner alleges that her right to have and confront witnesses was violated when the trial court refused to allow Petitioner's psychologist to testify regarding Pitchford's personality and mental capacity to understand the significance of waiving her *Miranda* rights. Despite the State's cursory treatment of claim five, its resolution is not as clear-cut as some of Petitioner's previous claims because Pitchford referenced this issue in numerous forms before Illinois courts. In her direct appeal, Pitchford argued that she was denied her Sixth Amendment right to the effective assistance of counsel when her trial counsel failed to offer available expert testimony (*i.e.*, Dr. Leska) concerning Pitchford's mental impairment at trial. In her petition for rehearing, Petitioner maintained that a rehearing was necessary because the record "rebut[ted]" the appellate court presumption that Dr. Leska "could not or would not have offered testimony" about Pitchford's mental impairment and its relation to her mental condition when she agreed to make her videotaped confession. In her PLA, she argued that her trial counsel was ineffective for "failing to offer available expert testimony concerning her mental impairment for the jury to consider in determining the reliability of her confession."[8]

---

[8] Pitchford did not address this issue in her post-conviction appeal, nor did she raise it in her post-conviction PLA.

Nevertheless, Petitioner's claims in her direct appeal and PLA, and her claim in her habeas petition, are based on fundamentally different *arguments*, despite being based on the same operative *facts* – that the trial court did not allow Dr. Leska to testify at trial. "[W]hen the habeas petitioner has failed to *fairly* present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim." *Perruquet,* 390 F.3d at 514 (emphasis added). As the Seventh Circuit has explained, a petitioner only fairly presents her federal claims to state courts "when [s]he articulates both the operate facts and the controlling legal principles on which [her] claim is based." *Id.* at 519. In order to save this claim from procedural default, Petitioner would have had to, "in some manner, alert the state courts to the federal underpinnings of [her] claim." *Id.* Here, however, the "federal underpinnings" of this claim – *i.e.*, that she was denied her right to have and confront witnesses – were not clearly articulated to the state courts. Instead, she framed this issue as one of ineffective assistance of counsel, a fundamentally different issue than whether the trial court erred in barring her expert from testifying.

In *Wilks v. Israel*, 627 F.2d 32 (7th Cir. 1980), the Seventh Circuit noted that

> only when the federal constitutional claim has been 'fairly presented' to the state court is the exhaustion requirement satisfied as to that claim. The fact that all of the facts upon which the petitioner relies were presented to the state courts is insufficient to establish exhaustion. A difference in legal theory between that urged in state courts and in a petition for writ of habeas corpus precludes exhaustion. However, mere variations in the same claim rather than a different legal theory will not preclude exhaustion (internal citations omitted).

*Id.* at 38. The "federal concerns of comity are satisfied if the State was given a fair opportunity to address the federal constitutional issue" (*Toney v. Franzen*, 687 F.2d 1016, 1021 (7th Cir. 1982)) – not if it had the chance to address *any* federal constitutional issue. See also *Chambers v. McCaughtry*, 264 F.3d 732 (7th Cir. 2001) (finding that a habeas petitioner had not presented a

claim at all levels for review because although he had "challenged the same jury instruction in each level of appellate review, the gravamen of the unfairness about which he complains has changed"); *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 2000) (holding that a habeas petitioner had procedurally defaulted on a claim when he asserted in federal court that he was denied the effective assistance of counsel because his trial attorney did not call one witness, but had asserted in state court that he was denied effective assistance of counsel because his trial attorney did not call *other* potential witnesses).

The situation here – that Petitioner presented constitutional claims at both the state and federal level, but presented different constitutional claims at each level – is different from the common one, in which a habeas petitioner presents a constitutional claim at the federal level but not at the state level. See, *e.g.*, *Perruquet*, 390 F.3d at 520 (finding that the petitioner had not adequately presented his due process claims at the state court level, but was attempting to present them at the federal level in his habeas petition). Despite the fact that Pitchford presented variations of a constitutional claim regarding the fact that Dr. Leska did not testify at all levels, she did not present the specific argument advanced here at the state level, so the state courts were not given an opportunity to pass on the issue of whether the trial court denied Petitioner the right to have and confront witnesses. Because Petitioner previously framed the issue as one of ineffective assistance of counsel, but now claims error by the trial court, she has not fairly presented this claim to the state courts and the Court may not consider the new legal theory (based on the same operative facts) presented in her habeas petition.

Furthermore, as with her other procedurally defaulted claims, there is no state corrective procedure available to Petitioner regarding this claim, nor has she attempted to overcome the

preclusive effect of her proceedings before state court by asserting either cause and prejudice or miscarriage of justice.  Therefore, Petitioner's fifth claim is procedurally defaulted.

      5.    *Claim Six*

In claim six, Petitioner argues that the trial court erred and abused its discretion by sentencing her to sixty years imprisonment given her age and other potential mitigating factors. Although she raised this issue in her direct appeal, she did not raise it in her PLA, nor did she attempt to revive the matter in her post-conviction submissions.  Thus, Petitioner's sixth claim is procedurally defaulted**.**

Furthermore, "[t]he remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Id.*  Put another way, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  See also *Williams v. Taylor*, 529 U.S. 362, 383 (2000) ("habeas corpus is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals").  This principle is enumerated in the federal habeas statute, which states that federal courts may only entertain writs of habeas corpus on behalf of those in custody pursuant to a state court decision "only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added). The Supreme Court has reasoned that the federal habeas statute "directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the

opinion of every reasonable state-court judge on the content of federal law." *Williams*, 529 U.S. at 389.

Here, Petitioner was sentenced pursuant to the laws of the state of Illinois. Petitioner argues that the state court abused its discretion in sentencing and misapplied the statutory mitigating factors.[9] Generally, the exercise of sentencing discretion is a matter of state law not cognizable in federal habeas corpus. See *Ben-Yisrayl v. Buss*, 540 F.3d 542, 554-55 (7th Cir. 2008) ("The Indiana Court of Appeals properly followed the dictates of the Indiana Code and the Indiana Supreme Court in upholding Ben-Yisrayl's sentence; and in making this determination, the court did not run afoul of Supreme Court precedent."). Indeed, in addressing the issue on Pitchford's direct appeal, the appellate court noted that "[t]he imposition of a sentence is a matter *within the trial court's discretion*." *Cf. Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000) ("in non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion"). Here, the Appellate Court upheld the trial court's sentence, noting that "it is clear from the record in the instant case that the trial court considered all relevant factors in aggravation and mitigation when imposing sentence." Furthermore, Petitioner has not demonstrated, and the Court cannot conclude, that the sentence, which was authorized by Illinois law, is "contrary to * * * clearly established Federal law." See also *Ben-Yisrayl*, 540 F.3d at 555 (7th Cir. 2008) (reversing district court decision granting habeas relief when original sentence was not clearly contrary to Federal law, and holding that because the state court of appeals "did not act contrary to clearly

---

[9] In support of her argument, Petitioner contends that the a sixty-year sentence imposed was excessive given that she was a fifteen-year-old runaway with an IQ in the low sixties who had been in DCFS care and that she played a relatively minor role (compared to her accomplices) in the attack on the victim of the crime.

established federal law, nor did they unreasonably apply this law, in upholding [the habeas petitioner's] sentence * * * [w]e are bound by [the] state court's interpretations of state law").

Finally, as with her other claims, Petitioner has not attempted to make a showing of cause and prejudice that might overcome her procedural defaults, nor invoked the "fundamental miscarriage of justice" exception. See *Coleman*, 501 U.S. at 740; *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Thus, Petitioner's sixth claim, as with two through five, is procedurally defaulted.

**B.    Claim One:  Assessment of Fees Pursuant to 735 ILCS 5/22-105**

In claim one, Petitioner argues that the Illinois Appellate Court erred in upholding the constitutionality of 735 ILCS 5/22-105, which allows for the imposition of filing fees on prisoners who file "frivolous" law suits. [10]  Petitioner asserts that the statute violates the Due

---

[10] 735 ILCS 5/22-105 reads, in pertinent part:

> (a) If a prisoner confined in an Illinois Department of Corrections facility files a pleading, motion, or other filing which purports to be a legal document in a case seeking post-conviction relief under Article 122 of the Code of Criminal Procedure of 1963 * * * and the Court makes a specific finding that the pleading, motion, or other filing which purports to be a legal document filed by the prisoner is frivolous, the prisoner is responsible for the full payment of filing fees and actual court costs.

> * * *

> (b) In this Section, "frivolous" means that a pleading, motion, or other filing which purports to be a legal document filed by a prisoner in his or her lawsuit meets any or all of the following criteria:
>> (1)    it lacks an arguable basis either in law or in fact;
>> (2)    it is being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>> (3)    the claims, defenses, and other legal contentions therein are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>> (4)    the allegations and other factual contentions do not have evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; or

Process and Equal Protection clauses of the Constitution, essentially arguing that what may seem to the court to be a "frivolous" suit is merely Petitioner's attempt to "defend herself against charges brought against her by the state."

Unlike all of her other claims, Petitioner's first claim has not been procedurally defaulted. She was assessed fees pursuant to 735 ILCS 5/22-105 subsequent to filing her post-conviction petition, and raised the issue of the statute's unconstitutionality in both her post-conviction appeal and her post-conviction PLA.

Nevertheless, Petitioner's first claim must fail on other grounds. As noted above, Pitchford must have been "in custody under the conviction or sentence *under attack*" when she filed her petition. *Maleng*, 490 U.S. at 490 (emphasis added). 28 U.S.C. § 2254(a) lays out this requirement, stating that federal courts may entertain an application for a writ of habeas corpus only on behalf of a person in custody pursuant to a state court conviction if the custody is in violation of the Constitution or laws or treaties of the United States. Therefore, the Court may grant Petitioner relief only to the extent that she is currently in custody and that the custody – and not any other sanction to which Petitioner is subject – violates the Constitution or federal laws or treaties. See also 28 U.S.C. 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless [h]e is in custody in violation of the Constitution or laws or treaties of the United States.").

Petitioner's claim that she was improperly assessed costs and fees for her frivolous postconviction petition does not attack the judgment pursuant to which she is in state custody. Rather, she claims a constitutional violation in collateral litigation not covered by § 2241 or § 2254. The consequences of that collateral litigation are fees, which do not confer a claim under

_____

(5)      the denials of factual contentions are not warranted on the evidence, or if specifically so identified, are not reasonably based on a lack of information or belief.

Sections 2241 or 2254.  See *Hanson v. Circuit Ct. of First Judicial Dist. of Ill.*, 591 F.3d 404, 406 (7th Cir. 1979) (holding "that a fine-only conviction is not a restraint on individual liberty" and did not satisfy habeas custody requirement); see also *Erlandson v. Northglenn Municipal Court*, 528 F.3d 785, 788 (10th Cir. 2008) ($233 fine was not "significant restraint on liberty" that satisfied custody requirement) (internal quotation marks omitted).  Pitchford's current custody has no relation to 735 ILCS 5/22-105 – her sentence is wholly independent of the imposition of fees; indeed, it was imposed prior to the imposition of fees, and its term was not altered by the imposition of fees.  Courts have recognized a distinction between disciplinary sanctions that merely alter the conditions of a prisoner's incarceration and those that affect the duration of confinement.  See *Moran v. Sondalle*, 218 F.3d 647, 651 (7th Cir. 2000) (directing prisoners to use 42 U.S.C. § 1983, not petitions under § 2254, to challenge administrative segregation and other non-durational changes in their custody status).  Therefore, the Court does not reach Petitioner's contention that 735 ILCS 5/22-105 constitutes a violation of due process or equal protection because she has not satisfied the "in custody" requirement with respect to claim one.

**IV.     Conclusion**

For the reasons stated above, Petitioner Pitchford's petition for writ of habeas corpus [6] is respectfully denied.

Dated: December 20, 2010                    _____
                                                                    Robert M. Dow, Jr.
                                                                    United States District Judge